UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICHAEL T. HAYES,<br><br>                 Plaintiff,<br><br>   v.<br><br>ICC-CCA; IDOC; SHANNON CLUNEY; LISA BURKE; and JANE DOES 1-3,<br><br>                 Defendants. | Case No. 1:12-cv-00351-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiff Michael T. Hayes, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), is proceeding pro se and in forma pauperis in this civil rights action. The Honorable Edward J. Lodge initially dismissed this case and entered judgment in January 2014, concluding that Plaintiff had failed to state a claim upon which relief could be granted. (Dkt. 17, 18.) The Ninth Circuit reversed in part and remanded, holding that Plaintiff's second amended complaint stated "a plausible claim that his protected [legal] mail was arbitrarily or capriciously opened outside his presence on two separate occasions," by Defendant Lisa Burke, in violation of the First Amendment. *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1212 (9th Cir. 2017).[1] Judge

---

[1] The Ninth Circuit affirmed the dismissal of Plaintiff's claims involving two other instances of alleged opening of his legal mail by Defendant Burke, as well as the dismissal of all other claims against all other Defendants. *Hayes*, 849 F.3d at 1211, 1213.

**MEMORANDUM DECISION AND ORDER - 1**

Lodge reopened this case and entered a scheduling order, and the case was later reassigned to the undersigned judge. (Dkt. 32, 35, 64.)

Now pending before the Court are cross-motions for summary judgment filed by Plaintiff and by Lisa Burke, the only remaining Defendant. (Dkt. 52, 59.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. *See* D. Idaho Loc. Civ. R. 7.1. Accordingly, the Court enters the following Order denying Plaintiff's motion for summary judgment, granting Defendant Burke's motion for summary judgment, and dismissing this case with prejudice.

## INTRODUCTION

Although Plaintiff at times refers to different pleadings he has submitted in this case—for example, a proposed amended complaint lodged on August 31, 2017 (Dkt. 42; *see also* Hayes Aff. dated Sept. 6, 2017, Dkt. 52-4, at 1)—the operative complaint in this case remains Plaintiff's second amended complaint ("SAC"); that pleading was ordered filed by the Court, as a separate docket entry, on March 30, 2017. (Dkt. 32 & 33.)

After the Ninth Circuit's partial reversal and remand, only two claims remain for adjudication. Plaintiff alleges that, on two occasions—once on December 28, 2010, and again on March 1 or 2, 2011[2]—Defendant Lisa Burke violated the First Amendment by opening Plaintiff's legal mail outside of his presence. *Hayes*, 849 F.3d at 1211-12.

---

[2] As set forth in Section 3, *supra*, it appears that the first piece of mail was actually opened on December 24 but was delivered to Plaintiff on December 28, 2010. In addition, Plaintiff's second amended complaint states that the second incident occurred on March 2, 2011, while Plaintiff's grievance regarding the incident states that it occurred on March 1, 2011. (SAC at 9-10; Dkt. 33-1 at 1.) It is also

**MEMORANDUM DECISION AND ORDER - 2**

# THE PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT

## 1. Standard of Law Governing Summary Judgment

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment ...." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). Rather, a case will survive summary judgment only if there is a *genuine* dispute as to a *material* fact. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a

---

unclear whether the second piece of mail was *opened* on March 1 or 2 or *delivered to Plaintiff* on March 1 or 2, 2011. These minor discrepancies in dates are immaterial to the resolution of this case.

party may cite to particular materials in the record or show that the adverse party is unable to produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (internal quotation marks omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific, triable facts." *So. Ca. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which [a] jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact should be "presented in a form that would be admissible in evidence," or it may be subject to being stricken. Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In determining admissibility for summary judgment

purposes, it is the content of the evidence, rather than its form, that must be considered. *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Where, as here, the parties submit cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.* Where the nonmoving party bears the burden of proof at trial, the moving party may prevail simply by "pointing out to the district court[] that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. However, where the *moving* party bears the ultimate burden of proof, that party "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992) (internal quotation marks omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the parties. Although all reasonable inferences which can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec.*

*Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

Pro se inmates are exempted "from *strict* compliance with the summary judgment rules," but not "from *all* compliance." *Soto v. Sweetman*, 882 F.3d 865, 872 (9th Cir. 2018). In responding to a motion for summary judgment, a pro se inmate must submit at least "some competent evidence," such as a "declaration, affidavit, [or] authenticated document," to support his allegations or to dispute the moving party's allegations. *Id.* at 873 (upholding grant of summary judgment against pro se inmate because the "only statements supporting [plaintiff's] ... argument are in his unsworn district court responses to the defendants' motion for summary judgment and to the district court's show-cause order").

## 2. Standards of Law Governing Interference-with-Mail Claims of Prisoners

Plaintiff asserts First Amendment claims under 42 U.S.C. § 1983, the civil rights statute. That statute provides a remedy for a violation of rights protected by the federal Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). To be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015). Negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986); *see also Cty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("Liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Prison officials generally are not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations or—as supervisors—knew of and failed to prevent those violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Section 1983 does not allow for recovery against an employer or principal simply because an employee or agent committed misconduct. *Taylor*, 880 F.2d at 1045.

"A defendant may be held liable as a supervisor under § 1983 'if there exists ... a sufficient causal connection between the supervisor's wrongful conduct and the

**MEMORANDUM DECISION AND ORDER - 7**

constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). A plaintiff can establish this causal connection by alleging that a defendant (1) "set[] in motion a series of acts by others"; (2) "knowingly refus[ed] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury"; (3) failed to act or improperly acted in the training, supervision, or control of his subordinates"; (4) "acquiesc[ed] in the constitutional deprivation"; or (5) engag[ed] in "conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1205-09.

Inmates enjoy a First Amendment right to send and receive mail. *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989). However, a prison or jail may adopt regulations or practices that impinge on a prisoner's First Amendment rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Slightly different standards apply to prison restrictions on inmate mail, depending on whether the mail is considered legal or non-legal. Mail from a prisoner's lawyer is legal mail, but mail from the courts is not. *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *as amended*, 135 F.3d 1318 (9th Cir. 1998).

Because "freedom from censorship is not equivalent to freedom from inspection or perusal," prison officials may open and inspect legal mail from attorneys to inmates. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). However, prison officials may not *read* an inmate's legal mail. *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017)

(*Nordstrom II*); *Nordstrom v. Ryan*, 762 F.3d 903, 910-11 (9th Cir. 2014) (*Nordstrom I*). "[E]ven a single instance of improper reading of a prisoner's [legal] mail can give rise to a constitutional violation." *Mangiaracina v. Penzone*, 849 F.3d 1191, 1197 (9th Cir. 2017); *Hayes*, 849 F.3d at 1212 ("[A] plaintiff need not allege a longstanding practice of violating his First Amendment rights in order to state a claim for relief on a direct liability theory.").

Further, "prisoners have a protected First Amendment interest in having properly marked legal mail opened [and inspected] only in their presence." *Hayes*, 849 F.3d at 1211 (internal quotation marks and alteration omitted). However, the *negligent* opening of an inmate's legal mail outside of the inmate's presence does not rise to the level of a constitutional violation and, therefore, does not violate § 1983. *See Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989) ("Stevenson has not shown, based on this record, that [defendant's] conduct concerning plaintiff's mail rose beyond the level of mere negligence."); *see also Daniels*, 474 U.S. at 332. If, on the other hand, the defendant's motive in opening an inmate's legal mail outside the inmate's presence was arbitrary and capricious, such conduct is a basis for § 1983 liability.[3] *Hayes*, 849 F.3d at 1211 ("[T]wo

---

[3] The Ninth Circuit's use of the phrase "arbitrary and capricious" when describing the requirements of a First Amendment claim of unconstitutional opening of a prisoner's legal mail suggests that—unlike many other § 1983 claims—recklessness might *not* be a sufficiently culpable state of mind to support such a claim. *See, e.g., Kingsley*, 135 S. Ct. at 2472 (stating, in the context of due process claim of excessive force by pretrial detainee, that to be liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind"); *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016), *cert. denied sub nom. Los Angeles Cty., Cal. v. Castro*, 137 S. Ct. 831 (2017) (requiring pretrial detainee asserting failure-to-protect claim under § 1983 "to prove more than negligence but less than subjective intent—something akin to reckless disregard"). The "arbitrary and capricious" standard "is well-known in the administrative law context, ... but it is not a familiar standard for judging constitutional torts." *Hayes*, 849 F.3d at 1217 (Bybee, J., concurring). However, for purposes of this

**MEMORANDUM DECISION AND ORDER - 9**

or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim."); *id*. at 1212 ("Hayes has alleged a plausible claim that his protected mail was arbitrarily or capriciously opened outside his presence on two separate occasions."); *see also id.* at 1218 (Bybee, J., concurring) ("An allegation that prison officials opened a prisoner's legal mail [outside the prisoner's presence], without an allegation that the mail was deliberately and not negligently opened, is not sufficient to state a cause of action under § 1983.").

### 3.     Undisputed Facts

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court will note those disputes and, when considering each party's motion for summary judgment, will use the version of the facts set forth by the opposing party, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The events giving rise to Plaintiff's claims occurred when the Idaho Correctional Center ("ICC")—the prison in which Plaintiff was confined—was privately managed by Corrections Corporation of America ("CCA"). Plaintiff claims that Defendant Lisa

---

decision only, the Court will assume that the *reckless* opening of a prisoner's legal mail outside of the presence of the inmate would constitute arbitrary and capricious conduct prohibited by the First Amendment, as described by the Ninth Circuit in Plaintiffs' previous appeal.

**MEMORANDUM DECISION AND ORDER - 10**

Burke, as well as other ICC staff and CCA itself, had an "illegal practice of opening Plaintiff's legal mail outside of his presence [that] is longstanding pervasive and well documented," and that this practice was especially targeted toward "inmates who [were] charged with sex offences and those who [were] similarly situated." (SAC, Dkt. 33, at 8.) Plaintiff is incarcerated on a conviction for "'lewd and lascivious conduct' with a 'minor under 16.'" *Hayes*, 849 F.3d at 1212.

According to IDOC policy, at ICC "all incoming and outgoing mail received from the institutional mailboxes and the Postal Service [was] processed within 24 hours of its arrival at the facility, excluding weekends and holidays." (Burke Decl. ¶ 4, Dkt. 59-3 at 2, and Ex. A, ICC Hayes 1-16.) ICC mailroom staff were "instructed and trained to double check the return address on the envelope before opening any mail to screen for any mail of a legal nature." (Burke Decl. ¶ 5.) However, mistakes occasionally occurred, and "there were times when legal mail would be opened inadvertently in error." (*Id.*)

When legal mail addressed to inmates was mistakenly opened by ICC mailroom staff, the mail "would not be read or scanned, but it would be placed back in the envelope, taped shut, and marked on the outside that it was opened in error and with the initials of the staff member who inadvertently opened the specific piece of mail." (*Id.*) The incident would also be logged in the mail log, "with the date, the inmate, the sending party, and the initials of the staff who opened the mail in error." (*Id.*)

Defendant Burke was the mailroom supervisor at ICC during the period of time relevant to Plaintiff's claims. It was Burke's responsibility "to ensure that the policies and

**MEMORANDUM DECISION AND ORDER - 11**

procedures set by IDOC, CCA, and ICC were carried out by other mailroom staff." (*Id.* ¶ 3.) As the mailroom supervisor, Burke "did not supervise every piece of mail that was opened, nor was it [her] responsibility to personally screen all the mail processed by other employees." (*Id.* ¶ 5.)

Though Plaintiff asserts that prison officials engaged in a longstanding practice of "acquiescing in their prison employees['] illegal and unconstitutional opening of prisoner attorney-client legal mail outside the presence of the inmate prisoner" (Pl. Memo. in Supp., Dkt. 52-1, at 3), this case involves only two distinct pieces of mail that were opened on two separate occasions.[4] On December 28, 2010, prison staff member Sara Fink delivered a piece mail to Plaintiff. (Appx. D to Hayes Aff. dated Oct. 18. 2017, Dkt. 52-8 at 2, ICC Hayes 125.) This piece of mail was sent by Plaintiff's post-conviction attorney and, therefore, was legal mail. (Pl. Memo in Supp. at 13-14.) Plaintiff believed the mail was opened outside of his presence because it had been sealed with tape. (*Id.* at 14.) He determined that, because his attorney did not use tape to seal the envelope, and because it was taped when he received it, prison officials must have opened it.

The ICC mail log indicates that there was a mistake with respect to that piece of mail and that someone in the mailroom opened it "in error" on December 24, 2010.[5] (Ex.

---

[4] This Court's dismissal of Plaintiff's policy or practice claims, which were asserted under *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978), was upheld on appeal. *Hayes*, 849 F.3d at 1213.

[5] The delay between the date the mail was opened and the date Plaintiff received it evidently resulted from "the time it takes to process the mail itself and then have it delivered to the inmates." (Burke Decl. ¶ 7.) The delay was also likely due in part to the Christmas holiday. Plaintiff does not assert any claim based on this delay.

**MEMORANDUM DECISION AND ORDER - 12**

B to Burke Decl., Dkt. 59-5 at 1, ICC Hayes 349.) It appears that the piece of mail was resealed with tape and then delivered to Plaintiff, but that "opened in error" was, inadvertently, not written across the piece of mail. The individual employee who opened this piece of legal mail initialed the mail log with an "M" inside of a circle. (*Id.*) Though Plaintiff's second amended complaint asserts—without personal knowledge—that Defendant Burke herself opened this piece of legal mail (SAC at 8-9), Burke states that she did not. (Burke Decl. ¶ 7.) Had Burke in fact opened Plaintiff's mail on that occasion, the notation she would have used in the mail log are the letters "LB"—not the letter "M." (*Id.* ¶ 8 and Ex. B, ICC Hayes 349.) Burke's "LB" notation can be seen on the mail log in cases of other pieces of legal mail, addressed to other inmates, that were opened by mistake.

In January 2011, Plaintiff filed a grievance about the December 28, 2010 incident. Defendant Burke initially responded that mailroom staff had not opened the legal mail, stating, "We would have marked opened in error if we had opened it." (Appx. B, Ex. 1, to Hayes Aff. dated Oct. 18, 2017, Dkt. 52-6 at 2.) The next level response, written by Anastacio Perez, noted the following:

> Reviewed offender concern with mail room supervisor [Burke] to which they indicated they did not open the offender[']s legal mail and if this would have occurred they would have indicated this on the envelope. Interview also conducted with Case mgr Fink indicating that there was a piece of tape on the envelope but could not tell if it were sent through the mail that way opened by mistake here or another location. I ... instructed mailroom supervisor [Burke] to instruct all to be very mindful of legal mail and ensure none is

**MEMORANDUM DECISION AND ORDER - 13**

opened for inspection without the presence of the offender
and not to be read....

(*Id.*) As noted above, the evidence now establishes—and the parties no longer dispute—that a member of the mailroom staff did, indeed, open this piece of legal mail outside of Plaintiff's presence.

On March 1 or 2, 2011, another piece of mail was delivered to Plaintiff after having been opened. The parties dispute the identity of the sender of the March 2011 piece of mail. Plaintiff asserts that the letter was "clearly marked from the law firm Moore and Elia LLP," and thus was legal mail. (Pl. Stmt. of Undisp. Facts, Dkt. 72, at 6.) However, evidence submitted by Defendant Burke—specifically, two separate parts of ICC's mail log—tends to show that the letter opened by prison staff and delivered to Plaintiff on March 1 or 2, 2011 was actually from this Court, not from an attorney, which would not be considered legal mail. (Ex. B to Burke Decl., Dkt. 59-5, at 2-5, ICC Hayes 450-453.)

As with the December 2010 piece of mail, Plaintiff's Complaint implies that Burke herself opened the March 2011 piece of mail. (SAC at 9-10.) However, the identifying notation on the mail log is from another mailroom employee, who initialed the log as "DED," not as "LB." (Ex. B to Burke Decl., Dkt. 59-5 at 2, ICC Hayes 450.) The mail log also suggests that this piece of mail was "opened in error" because it was in a "handwritten envelope." (*Id.*) During Plaintiff's pursuit of the prison grievance process, Defendant Burke informed Plaintiff that the March 2011 piece of mail was "opened in error and not read" and that mailroom staff "has been directed to follow proper

**MEMORANDUM DECISION AND ORDER - 14**

procedures regarding legal mail in accordance with policy 402.02.01.001." (Appx. B, Dkt. 52-6 at 4, Ex. 2 to Hayes Aff. dated Oct. 18, 2017.)

4. **Plaintiff Is Not Entitled to Summary Judgment**

Plaintiff bears the burden of proof in this § 1983 action. Therefore, Plaintiff is entitled to summary judgment only if he provides uncontroverted evidence that would entitle him to a directed verdict at trial. *See Houghton*, 965 F.2d at 1536 (internal quotation marks omitted). Plaintiff has failed to do so.

Plaintiff has not submitted any evidence, based on anybody's personal knowledge or any documentation, to suggest that Defendant Burke actually opened either piece of legal mail. Because Plaintiff has not shown that Defendant Burke personally participated in opening his mail, he must instead establish that, as the mailroom supervisor, she had a sufficient causal connection to the alleged constitutional violation committed by one of the mailroom staff. *See Starr*, 652 F. 3d at 1207. That is, Plaintiff must show that Defendant Burke "directed the violations, or knew of the violations and failed to act to prevent them." *Taylor*, 880 F.2d at 1045.

The record before the Court contains no evidence from which a reasonable factfinder could conclude that Defendant Burke directed her staff to open Plaintiff's legal mail or that she was aware of a problem with mailroom staff opening legal mail and yet failed to act to correct or prevent that problem. Plaintiff has submitted nothing of the sort, and Defendant Burke has stated, under oath, that she had no contemporaneous knowledge

of the fact that someone in the mailroom opened Plaintiff's legal mail in December 2010 or March 2011. (Burke Decl. ¶ 7.)

Additionally, Plaintiff has not submitted sufficient evidence that whoever opened the two pieces of mail outside of Plaintiff's presence did so recklessly or intentionally. Rather, the *only* evidence as to the reason behind the opening of Plaintiff's legal mail on these two occasions is that they were opened inadvertently. In sum, Plaintiff has not met his burden of providing evidence that would require a directed verdict at trial. Therefore, he is not entitled to summary judgment.

The evidence Plaintiff has provided simply does not support his claims. Plaintiff has submitted several of his own affidavits, as well as affidavits of other inmates. The affidavits of Robert Lavin are irrelevant to Plaintiff's claims in this case, as Lavin was a witness to Plaintiff's receipt of opened legal mail on June 2 and 13, 2011. (Lavin Aff. dated June 8, 2011, Dkt. 52-3 at 2-3; Lavin Aff. dated June 20, 2011, Dkt. 52-3 at 8-9). The Ninth Circuit has already affirmed the dismissal of Plaintiff's claims related to those two incidents. *Hayes*, 849 F.3d at 1213. Plaintiff's affidavits recounting the incidents on June 2 and 13, 2011, are similarly irrelevant. (Hayes Aff. dated June 8, 2011, Dkt. 52-3 at 5-6; Hayes Aff. dated June 20, 2011, Dkt. 52-3 at 11-12.)

The affidavit of Michael Scroggins states that he saw an opened piece of legal mail delivered to Plaintiff on March 31, 2017, which is also not at issue in this case. (Scroggins Aff., Dkt. 52-5, at 1-3.) Finally, Plaintiff's September 6, 2017 affidavit provides no support for his claims; it discusses the actions of prison officials other than

**MEMORANDUM DECISION AND ORDER - 16**

Defendant Burke and raises claims that have nothing to do with the December 2010 and March 2011 pieces of incoming mail opened by prison staff. (Hayes Aff. dated Sept. 6, 2017, Dkt. 52-4 at 8-10.) Plaintiff asserts in that affidavit that unidentified prison officials stopped his *outgoing* legal mail to "outside legal officials" from being sent from the prison. (*Id*. at 8.) The affidavit also discusses multiple incoming mail incidents other than the two remaining in this case. (*Id*. at 10.) Any such actions by prison staff are not at issue in this action.

For the foregoing reasons, Plaintiff is not entitled to summary judgment on his claims that Defendant Burke violated his First Amendment rights with respect to the December 2010 and March 2011 legal mail incidents.

**5.     Defendant Burke Is Entitled to Summary Judgment**

As set forth above, Defendant Burke has provided evidence—in the form of her own declaration and the ICC mail logs—that she did not open Plaintiff's legal mail in December 2010 or March 2011; instead, they were opened by other mailroom staff, and Burke had no knowledge of these incidents at the time. (Burke Decl. ¶ 7 and Ex. B, Dkt. 59-5 at 1-2, ICC Hayes 349, 450.) The mail logs also indicate that Plaintiff's legal mail was opened by mistake on those occasions. Therefore, Defendant Burke has met her initial burden with respect to her motion for summary judgment. The burden now shifts to Plaintiff to establish a genuine dispute as to both Burke's participation in the opening of his legal mail and her motivation, if any, behind that participation.

The Court concludes that Plaintiff's submitted materials do not provide evidence supporting his claims beyond the mere allegations of the second amended complaint. Nor

**MEMORANDUM DECISION AND ORDER - 17**

do they dispute Defendant Burke's evidence (1) that she did not open either the December 2010 or the March 2011 item of legal mail or (2) that she had any contemporaneous knowledge of any other staff member's opening of those pieces of mail. Plaintiff has also not provided any evidence that the opening of either piece of legal mail was anything more than an inadvertent mistake, which—at most—could constitute negligence, which is not sufficient to support liability under § 1983.

This Court has taken into account Plaintiff's pro se prisoner status and has considered the difficulty he faces in obtaining evidence for this type of claim. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Nonetheless, at summary judgment Plaintiff is required to offer something more than the allegations in the second amended complaint, because the complaint's allegations regarding (1) Burke's participation, and (2) the state of mind of the person who opened the legal mail, are not based upon the personal knowledge of Plaintiff or any witness. *See Soto*, 882 F.3d at 872; *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 965 ("[I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own."). Plaintiff's submissions do not constitute such evidence; rather, they (1) are conclusory statements restating the allegations made in the second amended complaint or (2) involve events not at issue in this case. *See Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (stating that, when the moving party carries its initial burden, the opposing party "cannot defeat summary judgment with allegations in the

complaint, or with unsupported conjecture or conclusory statements"); *accord Lane v. Dep't of Interior*, 523 F.3d 1128, 1140 (9th Cir. 2008) ("Lane's allegations in her complaint and her attorney's statements at oral argument are insufficient to defeat a summary judgment motion."); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1019 (9th Cir. 2000) ("On a motion for summary judgment, the non-moving party cannot simply rest on its allegations without any significant probative evidence tending to support the complaint.").

At the pleading stage, Plaintiff's allegations that Defendant Burke opened his legal mail and that "ICC mailroom staff illegally opened inmates' legal mail, 'especially inmates who are charged with sex offences,'" was enough to state a plausible claim that Defendant Burke opened the two pieces of legal mail with a sufficiently culpable state of mind. *Hayes*, 849 F.3d at 1212 (quoting SAC at 8); *see also Kingsley*, 135 S. Ct. at 2472 (2015); *Lewis*, 523 U.S. at 849; *Daniels*, 474 U.S. at 332. It is not enough, however, on summary judgment. There is simply no evidence to support Plaintiff's claims that Defendant Burke violated his First Amendment rights with respect to his legal mail in December 2010 or March 2011.

## CONCLUSION

For the foregoing reasons, Plaintiff has not submitted evidence that, if uncontroverted at trial, would entitle him to a directed verdict. However, Defendant Burke has established that there is no genuine dispute of material fact and that Plaintiff

cannot satisfy the elements of his First Amendment claims. Therefore, Defendant Burke is entitled to judgment as a matter of law.

## ORDER

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (Dkt. 52) is DENIED.

2. Defendant Burke's Motion for Summary Judgment (Dkt. 59) is GRANTED, and this entire action is DISMISSED with prejudice.

DATED: September 4, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge